McATEE, Appellant,

v.

OTTAWA COUNTY DEPARTMENT OF HUMAN SERVICES, Appellee.

[Cite as *McAtee v. Ottawa Cty. Dept. of Human Serv.* (1996), 111 Ohio App.3d 812.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–95–070.

Decided June 21, 1996.

*Frank W. Reinheimer,* for appellant.

*Lowell S. Petersen,* Ottawa County Prosecuting Attorney, for appellee.

MELVIN L. RESNICK, Presiding Judge.

This is an accelerated administrative appeal from a judgment of the Ottawa County Court of Common Pleas, which affirmed an order of the Director of the Ottawa County Department of Human Services that revoked appellant's certificate to operate a Type B day-care home. Appellant, Marnie McAtee, appeals that judgment and assigns the following as error in the proceedings below:

"1. The Trial Court erred in its Decision and Judgment Entry of November 2, 1995, finding that Appellee's finding was proper under Ohio Administrative Code Section 5101:2–14–06.

"2. Appellee's finding by the Referee or Examiner was improper, finding that 'the agency revocation of your Child Care Certificate to be proper.'"

Because of the nature of this case, it is hereby removed, pursuant to Loc. App.R. 12(B), from the accelerated docket and placed on the court's regular docket.

The underlying facts of this case are undisputed. On June 8, 1994, appellant was certified by appellee, the Ottawa County Department of Human Services, to provide child day-care services for up to six children in her home. Appellant entered into a one-year contract with the county department of human services to provide these services. In return for her services, appellant was paid, in full or in part, with public funds.

On August 31, 1994, a four-year-old boy, while in the care of appellant, almost drowned in appellant's swimming pool. At the time the boy fell into the pool, appellant was, admittedly, in the house preparing snacks for the children.

A complaint of neglect was lodged against appellant. After an investigation, the Ottawa County Department of Human Services substantiated the allegation of neglect. Consequently, on October 7, 1994, appellant was informed, in a letter signed by the Director of the Ottawa County Department of Human Services,

that her Type B certificate was revoked for noncompliance with R.C. Chapter 5104 and Ohio Adm.Code 5101:2–14–06 and 5101:2–14–10.

On October 18, 1994, appellant filed a notice of appeal in the common pleas court from the director's order of revocation of her certificate. Upon appellee's motion to dismiss for lack of an appealable administrative order, the trial court determined that appellant was entitled to notice, a hearing, and an opportunity to be heard prior to revocation of her certificate. This cause was remanded so that these requirements could be satisfied.

A hearing was held before the Public Assistance Administrator for the Ottawa County Department of Human Services, who stated that she was acting on behalf of the director. After the hearing, an order was issued, finding that the revocation was proper. Appellant amended her notice of appeal indicating that the appeal was brought pursuant to R.C. Chapter 119.

After the parties briefed the issues in this case, the common pleas court entered judgment affirming the order of revocation. The court determined that, pursuant to R.C. 2506.04, the agency order was supported by reliable, probative and substantial evidence. Appellant timely appealed that judgment to this court.

As this is a case of first impression in this appellate district, we must first discuss whether the trial court had subject-matter jurisdiction to consider appellant's appeal and, if so, the statute governing that appeal.

■ Absent constitutional or statutory authority, the right to appeal an administrative decision is not inherent or inalienable. *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 26, 591 N.E.2d 1203, 1204–1205. In *Gamblin v. Montgomery Cty. Dept. of Human Serv.* (1993), 89 Ohio App.3d 808, 627 N.E.2d 1010, the Second Appellate District analyzed the salient provisions of R.C. Chapter 5104 and rules promulgated pursuant to those provisions and held that the revocation of a certificate, such as the one revoked in this case, for the operation of a Type B home could be appealed pursuant to R.C. Chapter 119. For the following reasons, we agree.

R.C. 119.01(A) defines an "agency" as, among other things, "any administrative or executive officer, department, division, bureau, board, or commission of the government of the state having the authority or responsibility of issuing, suspending, revoking, or canceling licenses." A "certificate" is included in the definition of a "license." See R.C. 119.01(B). R.C. 119.12 allows any party adversely affected by an order of an agency issued pursuant to an adjudication revoking a license to appeal to the court of common pleas of the county in which the licensee is a resident.

R.C. Chapter 5104 provides the procedures for licensing or certifying publicly funded child day-care centers (for thirteen or more children), Type A day-care

homes (for seven to twelve children) and Type B day-care homes (for one to six children). Each type of day-care facility has its own specified certification procedures. See R.C. 5104.011(A), (B), (C) and (D), 5104.011(F), and 5104.011(G). Pursuant to R.C. 5104.011(A)(9) and 5104.011(F)(9), the Director of the Ohio Department of Human Services is required to promulgate rules involving procedures, not otherwise provided for in R.C. Chapter 119, related to issuing, denying, renewing, and revoking licenses for day-care centers and Type A day-care homes respectively. In addition, R.C. 5104.04(E) expressly provides for notice and hearing pursuant to R.C. Chapter 119 prior to the revocation of the license of a center or Type A day-care home. Furthermore, R.C. 5104.03(F), which is applicable *only* to child day-care centers and Type A homes, expressly states that any applicant whose license is denied or any owner whose license is not renewed or revoked may appeal pursuant to R.C. 119.12.

In the case of Type B day-care homes, R.C. 5104.011(G)(7) provides that the Director of the Ohio Department of Human Services shall promulgate rules for certification, pursuant to R.C. Chapter 119, including "[p]rocedures for issuing, renewing, denying, refusing to renew, or revoking certificates." R.C. 5104.11(A) authorizes the county department of human services, not the state, to issue, deny, renew and revoke certificates for Type B day-care homes. Counties are required to follow the mandates of R.C. Chapter 5104 and the rules promulgated thereunder. *Id.* R.C. 5104.11(C) does not explicitly require notice or hearing prior to the revocation of a Type B certificate. Instead, this statute provides: "The county director [of human services] may revoke the [Type B day-care home] certificate when he determines that the revocation is necessary."

A reading of the foregoing statutory law, as well as other pertinent portions of the Ohio Administrative Code, see, *e.g.,* Ohio Adm.Code 5101:2–16–07 (responsibilities of county department of human services), reveals that the statutes delegate the authority to certify and allocate funds to Type B homes to the county as an agent of the state. The statutes also provide an express right of appeal to centers and Type A homes pursuant to R.C. Chapter 119 and are silent as to any appeal rights afforded to proprietors of Type B day-care homes. The *Gamblin* court, however, looked at the regulations governing the revocation process to find that a Type B certificate holder had the right to appeal the revocation of his or her certificate pursuant to R.C. Chapter 119.

The rules promulgated by the Director of the Ohio Department of Human Services governing the certification of Type B day-care homes are set forth in Ohio Adm.Code Chapter 5101:2–14. "Procedures" for the denial and revocation of such certificates are found in Ohio Adm.Code 5101:2–14–06, which reads:

"(A) If the county director determines that the applicant is not in compliance with Chapter 5101:2–14 of the Administrative Code and Chapter 5104. of the

Revised Code, the county director shall deny approval of the applicant. The county shall notify the applicant in writing of the basis for the denial. Pursuant to section 5104.03 of the Revised Code, all decisions by the county director regarding denial and revocation are final and not subject to appeal."

As stated previously, R.C. 5104.03, which applies only to centers and Type A homes, describes the procedures for the issuance of licenses and for inspections, and expressly bestows a right of appeal to the licensed proprietors of such facilities upon, *inter alia,* the revocation of the license. Due to the citation to this statute in Ohio Adm.Code 5101:2–14–06, the *Gamblin* court found an internal inconsistency in Ohio Adm.Code 5101:2–14–06. *Id.,* 89 Ohio App.3d at 812, 627 N.E.2d at 1012–1013. We agree with the result reached by the Second District Court of Appeals. However, that court failed to discuss, in any depth, the reasoning underlying its conclusion. We find that, in order to determine whether appellant had the right to appeal, we must examine the relevant statutes to decide whether the legislature intended holders of Type B day-care certificates to be entitled to this right.

■ The paramount goal in the construction or interpretation of a statute is to ascertain and give effect to the legislature's intent in enacting that statute. *Featzka v. Millcraft Paper Co.* (1980), 62 Ohio St.2d 245, 247, 16 O.O.3d 280, 281–282, 405 N.E.2d 264, 265–266. A court must first look to the language of the statute to determine legislative intent. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, 632–633; *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. The rules of statutory construction cannot be applied when the meaning of a statute is plain and unambiguous on its face. *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213–214, 404 N.E.2d 159, 161–162. It is only where the words of a statute are ambiguous, where they are based upon an uncertain meaning, or where there is an apparent conflict of some provisions, that a court has the right to interpret a statute. R.C. 1.49; *Kroff v. Amrhein* (1916), 94 Ohio St. 282, 285, 114 N.E. 267, 268.

In the present case, we are of the opinion that, in referring to R.C. 5104.03 in Ohio Adm.Code 5101:2–14–06, the director applied the rule of statutory construction known as *expressio unius est exclusio alterius,* which translates as "the express inclusion of one thing means the exclusion of others." *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206, 210–211; *Venham v. Astrolite Alloys* (1991), 73 Ohio App.3d 90, 96, 596 N.E.2d 585, 588–589. That is, the director based Ohio Adm.Code 5101:2–14–06 on the fact that licensees of centers and Type A day-care homes are expressly granted the right of appeal in the statute, while holders of Type B day-care certificates are not. Therefore, he

reasoned that Type B certificate holders are excluded from appealing the revocation of their certificates. We must reject this reasoning.

A review of the various pertinent sections of R.C. Chapter 5104, as set forth above, reveals that ambiguities exist with regard to (1) procedures needed prior to the revocation of a Type B certificate, and (2) the ability to appeal the denial or revocation of a Type B certificate. R.C. 5104.011(G) mandates that the director promulgate rules pursuant to R.C. Chapter 119 for certification of Type B day-care homes. That section of the statute also orders the director to formulate "procedures" for the revocation of a Type B certificate. Ohio Adm.Code 5101:2–14–06 was promulgated pursuant to R.C. Chapter 119. Despite all of these references to R.C. Chapter 119 which prescribe a procedure to be followed in the revocation of a license (certificate) and a right of appeal, R.C. 5104.11(C) appears to permit the county director of human services to revoke a Type B certificate whenever he deems it necessary.

 Where, as in this case, an ambiguity exists in the wording of a statute, or the significance of the terms of a statute are doubtful, the *in pari materia* rule of construction is applicable. *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St.3d 24, 27–28, 512 N.E.2d 332, 334–336. Statutes or sections of statutes which cover the same subject matter must be read *in pari materia* and construed so as to give force and effect to all of the statutes or sections. *United Tel. Co. v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129, 1130–1131. It is the duty of a court to construe statutes so that they are consistent and harmonious with a common policy and give effect to legislative intent. *Ohio Bus Sales, Inc. v. Toledo Bd. of Edn.* (1992), 82 Ohio App.3d 1, 7, 610 N.E.2d 1164, 1168–1169.

 In the case under consideration, the intent of the legislature in enacting R.C. Chapter 119 was to provide due process rights to persons affected by orders of state agencies. R.C. Chapter 5104 and the rules promulgated in furtherance of the statute make numerous references to R.C. Chapter 119 and also express an intent to grant due process rights to a particular group of licensees. R.C. 5104.011(G) requires the director to promulgate rules for type B day-care homes *in accordance with R.C. Chapter 119.* R.C. 119.12 permits the appeal of an agency's revocation of a license. Thus, we must read the relevant provisions of the two statutes together and, in order to give each full force and effect, find that the rules promulgated by the director governing the revocation of a Type B day-care certificate include the procedures found in R.C. 119.01 to 119.13. For these reasons, we conclude, as did the *Gamblin* court, that the revocation of a Type B day-care certificate is appealable pursuant to R.C. Chapter 119.

We now turn to the merits of appellant's assignments of error.

Appellant's second assignment of error challenges certain procedures followed by appellee in the hearing held on the revocation of her certificate.

Again, R.C. 5104.04(E) sets forth specific procedures, including notice and a hearing, that must be followed prior to the revocation of the license for a center or a Type A day-care home. The statute controlling the revocation of the certificate of a Type B day-care home merely states that a director of a county department of human services may revoke such a certificate when necessary. R.C. 5401.11(C). The statute is silent as to any requirement of notice and a hearing.[1] However, reading R.C. 5401.11(C) together with the material sections of R.C. Chapter 119 and in order to harmonize the statutes, we find that appellee was required to follow the notice and hearing procedures set forth in R.C. 119.01 to 119.13, particularly in R.C. 119.07 and 119.09.

Appellant initially asserts that the public assistance administrator representing the Director of the Ottawa County Department of Human Services was not an attorney as required by R.C. 119.09. Our reading of the statute discloses that the "agency" may conduct the required hearing or appoint a referee or examiner, who is an attorney at law licensed to practice in this state, to conduct the hearing and to prepare a report and recommendation for the agency. To repeat, an "agency" in the context of this case must be an entity having the authority to revoke a Type B certificate. R.C. 119.01(A). Under the controlling statutes, only the director of a county department of human services has that authority. He cannot therefore delegate that duty to another administrator or official. Accordingly, the hearing could be conducted only by an appointed referee or examiner having the credentials set forth in the statute. The record fails to demonstrate that the public assistance administrator had the proper qualifications. As a result, the hearing procedures set forth in R.C. 119.09 were not met. For this reason, and to the extent that appellant's second assignment of error addresses this issue, that assignment is found well taken.

Due to our ruling on the dispositive argument in appellant's second assignment of error, we need not reach the merits of her remaining arguments under that assignment or those in her first assignment of error, and the same are, hereby, found moot.

We are compelled to further note that the common pleas court applied the wrong standard in reviewing the order of revocation. The trial court was required to review the agency's order under R.C. 119.12 rather than R.C. 2506.04. Accordingly, the judgment of the Ottawa County Court of Common Pleas is

---

1. The principle of *expressio unius est exclusio alterius* could also be applied in construing R.C. 5104.04(E) to reach the conclusion that a Type B certificate holder has no right to notice of the possible revocation and a hearing.

vacated as a matter of law. This cause is remanded for the purpose of a hearing held pursuant to R.C. 119.09 and review, if necessary, pursuant to R.C. 119.12. Costs of this appeal assessed to appellee.

*Judgment vacated*
*and cause remanded.*

ABOOD and SHERCK, JJ., concur.